# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-8018

THERESA MEJDRECH, *et al.*,

*Plaintiffs-Appellees*,

v.

MET-COIL SYSTEMS CORP.,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 6107—**William J. Hibbler**, *Judge*.

SUBMITTED OCTOBER 10, 2002—DECIDED FEBRUARY 11, 2003

Before POSNER, COFFEY, and DIANE P. WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant seeks permission to appeal under Fed. R. Civ. P. 23(f) from the grant of class certification. We grant permission in order to determine the appropriateness of class action treatment in pollution cases, a matter on which the case law is sparse and divided, compare *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988); *Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 480-82 (D. Colo. 1998), and *Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705, 713 (D. Ariz. 1993), with *Church v. General Electric Co.*, 138 F. Supp. 2d 169, 181-82

(D. Mass. 2001), and *Thomas v. FAG Bearings Corp., Inc.*, 846 F. Supp. 1400, 1403-05 (W.D. Mo. 1994), although the only appellate case (*Sterling*) permits such treatment and the district court cases that reject it (*Church* and *Thomas*) do so without extended discussion. This court has not spoken to the issue.

The defendant, Met-Coil, owns a factory in Lisle, a town outside Chicago. The homes of the approximately 1,000 members of the plaintiff class are within a mile or two of the factory. The complaint alleges that a storage tank on Met-Coil's property has leaked a noxious solvent, TCE, that has seeped into the soil and groundwater beneath the class members' homes, impairing the value of their property. The suit seeks injunctive and monetary relief under federal and Illinois environmental law. Mindful that not only the amount but the fact of damage might vary from class member to class member, the district judge limited class treatment to what he described as "the core questions, i.e., whether or not and to what extent [Met-Coil] caused contamination of the area in question." Whether a particular class member suffered any legally compensable harm and if so in what dollar amount are questions that the judge reserved for individual hearings if and when Met-Coil is determined to have contaminated the soil and water under the class members' homes in violation of federal or state law.

We think the district judge's determination was reasonable, indeed right. Rather than parse the subdivisions of Rule 23 as the district judge (appropriately) did, we merely point out that class action treatment is appropriate and is permitted by Rule 23 when the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge

or jury. Often, and as it seems to us here, these competing considerations can be reconciled in a "mass tort" case by carving at the joints of the parties' dispute. If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings. *Hardy v. City Optical Inc.*, 39 F.3d 765, 771 (7th Cir. 1994); *In re Hanford Nuclear Reservation Litigation*, 292 F.3d 1124, 1133-35 (9th Cir. 2002); *Sterling v. Velsicol Chemical Corp., supra*, 855 F.2d at 1200; *Weiss v. York Hospital*, 745 F.2d 786, 809 (3d Cir. 1984); 3 Herbert B. Newberg & Albert Conte, *Newberg on Class Actions* § 17.10 (3d ed. 1992). The questions whether Met-Coil leaked TCE in violation of law and whether the TCE reached the soil and groundwater beneath the homes of the class members are common to all the class members. The first question is particularly straightforward, but the second only slightly less so. The class members' homes occupy a contiguous area the boundaries of which are known precisely. The question is whether this area or some part of it overlaps the area of contamination. Supposing all or part of it does, the next question is the particular harm suffered by particular class members whose homes are in the area of contamination. The answer to this question would depend on such things as whether the class member gets his water from Lake Michigan or from a well—in the former case his water supply, at least, is unlikely to have been contaminated. This has to be decided class member by class member rather than in a consolidated proceeding.

When enormous consequences turn on the correct resolution of a complex factual question, the risk of error in

having it decided once and for all by one trier of fact rather than letting a consensus emerge from several trials may be undue. *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 288 F.3d 1012, 1020 (7th Cir. 2002); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1298-99 (7th Cir. 1995). This is not such a case. First, the two questions that the judge has set for class treatment—whether there was unlawful contamination and what the geographical scope of the contamination was—are not especially complex. Second, even if these questions are answered against Met-Coil, the consequences for it will not be catastrophic. The individual class members will still have to prove the fact and extent of their individual injuries. The need for such proof will act as a backstop to the class-wide determinations. If the judge erroneously finds that the class members' homes were in the area of contamination, none of the class members will be able to prove any damages and as a result the cost of this lawsuit to Met-Coil, though not trivial, will be limited to the cost of defending the suit.

This is also not a case in which, because class members are scattered around the country and proceeding under the laws of different states, determination of class-wide issues would require the judge to create a composite legal standard that is the positive law of no jurisdiction. *In re Bridgestone/Firestone, Inc., Tire Products Liability Litigation, supra*, 288 F.3d at 1020; *In re Rhone-Poulenc Rorer, Inc., supra*, 51 F.3d at 1300. All the class members are residents of the same state and are proceeding under the same federal and state laws.

We can see, in short, no objection to the certification other than one based on a general distaste for the class-action device.

AFFIRMED.

No. 02-8018                                                    5

A true Copy:

        Teste:

                                _____
                                *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*