Mary A. CRUZ, Johnny Ray Ward, Daryl W. Hoksbergen, and Michael Porcaro, Plaintiffs-Respondents,

v.

ALL SAINTS HEALTHCARE SYSTEM, INC. and Midwest Medical Record Associates, Defendants-Appellants.†

Court of Appeals

*No. 00–1473. Submitted on briefs January 12, 2001.—Decided February 28, 2001.*

2001 WI App 67

(Also reported in 625 N.W.2d 344.)

†Petition to review filed.

On behalf of the defendants-appellants, the cause was submitted on the joint briefs of *Robert L. Gegios, Timothy W. Feeley* and *Kalisa B. Barratt* of *von Briesen, Purtell & Roper, S.C.* for All Saints HealthCare System, and *Michael Fischer, Lisa S. Neubauer* and *Caroline A. Hogan* of *Foley & Lardner* for Midwest Medical Record Associates, all of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Adrian P. Schoone, Mark J. Leuck,* and *Chris G. Halverson* of *Schoone, Leuck, Kelly, Pitts & Knurr* of Racine; *John A. Becker* of

*Becker, French & DeMatthew* of Racine; *William P. Dixon,* and *Sarah E. Siskind* of *Miner, Barnhill & Galland, P.C.* of Madison.

A nonparty brief was filed by *Gary Bakke* for the *State Bar of Wisconsin*; *George Burnett* of *Liebmann, Conway, Olejniczak & Jerry* of Green Bay; *Scott Minter* for the *University of Wisconsin Law School*; and *Catherine La Fleur* of *La Fleur Law Office, S.C.* of Milwaukee.

A nonparty brief was filed by *Tim Hartin* for *Wisconsin Health and Hospital Association, Inc.* of Madison and *Mark Adams* for the *State Medical Society of Wisconsin* of Madison.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1.  BROWN, P.J.   The issue before this court is whether the trial court erroneously exercised its discretion in certifying a class in a suit to recover unreasonable fees charged for copies of healthcare records. We are satisfied that the trial court did not act erroneously because it considered the relevant facts and law and reached a conclusion that a reasonable judge could reach. Therefore, we affirm.

¶ 2.   The trial court certified as a class action a lawsuit brought by four patients of All Saints Healthcare System, Inc. (All Saints). All of these patients had requested, through their attorneys, copies of their medical records in anticipation of pursuing bodily injury tort claims. The class representatives allege that the uniform fee All Saints charged for copies of their medical records was "unreasonable" and in excess of the rate

permitted by WIS. STAT. § 146.83(1)(b) (1999–2000),[1] which provides in relevant part:

> **(1)** Except as provided in s. 51.30 or 146.82(2), any patient or other person may, upon submitting a statement of informed consent:
>
> . . . .
>
> (b) Receive a copy of the patient's health care records upon payment of reasonable costs.

¶ 3. Midwest Medical Record Associates (MMRA), the other named defendant, is the sole provider of copies of healthcare records pursuant to an exclusive contract it has with All Saints. MMRA charges numerous different rates depending on the request. For prelitigation requests made by attorneys on behalf of patients, MMRA charges a processing fee of $25 per request, $1 per page of records copied, postage and handling, and sales tax. Patients seeking copies of their own medical records pay substantially lower charges. There is no charge for records if they are requested for continuity of care purposes.

¶ 4. Upon the filing of the lawsuit, there followed a series of motions and hearings. The parties also engaged in a limited amount of discovery, including deposing witnesses, to clarify class certification issues. At one point, however, the trial court issued an order prohibiting the parties from taking further depositions for purposes of class discovery, finding that the questions asked deponents went "too far afield" from what was permissible. On May 15, 2000, the trial court entered an order certifying the following class pursuant to WIS. STAT. § 803.08:

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

Any person who, since January 5, 1998,[2] has requested or will request from All Saints Healthcare System (including St. Mary's Hospital, St. Luke's Hospital and All Saints Medical Group) or MMRA, its medical records provider, copies of patient healthcare records and incurred or will incur a billing charge therefor in excess of State or Federal mandated rates provided such request was or is submitted by or through an attorney, insurance company or individual, other than an individual requesting his/her own records. (Footnote not in original.)

¶ 5.  On appeal, All Saints and MMRA argue that the trial court's analysis of the prerequisites for class certification represents an erroneous exercise of discretion, that they were denied the opportunity to fully develop a factual record through discovery, and that class certification under WIS. STAT. § 803.08 conflicts with the legislative intent of the medical records law in WIS. STAT. §§ 146.83 and 146.84. First, we will address the issue of legislative intent as we see this as a threshold inquiry regarding the appropriateness of class certification in this case.

¶ 6.  Section 146.84 of the Wisconsin statutes provides that an individual who is injured by a health care provider's knowing and willful violation of the "reasonable costs" provision of WIS. STAT. § 146.83(1)(b) may recover for "actual damages to that person." WIS. STAT. § 146.84(1)(b). As amici curiae, the State Medical Society of Wisconsin (SMS) and the Wisconsin Health and Hospital Association (WHHA) interpret this language to require an individual, case-by-case determination of

---

[2] This is the date upon which the contract between All Saints and MMRA became effective and when new and substantially higher copying rates were implemented.

claims and damages. Class certification, on the other hand, entails a uniform award of class-wide relief for claimants. Such a damages award, they argue, without case-by-case inquiry, would undermine the legislative intent of the medical records law. For reasons we discuss below, we conclude that class certification does not contravene the purposes of the medical records law; rather, it provides an ideally suitable mechanism for enforcing that law.

¶ 7.   Whether WIS. STAT. §§ 146.83 and 146.84 must be construed to shield healthcare record providers from class action is a matter of statutory interpretation, which is a question of law subject to our de novo review. *Hannigan v. Sundby Pharmacy, Inc.*, 224 Wis. 2d 910, 920, 593 N.W.2d 52 (Ct. App. 1999). The main goal of statutory interpretation is to discern the intent of the legislature and give it effect. *State ex rel. Frederick v. McCaughtry*, 173 Wis. 2d 222, 225, 496 N.W.2d 177 (Ct. App. 1992). We first look to the plain language of the statute; only if it is ambiguous do we turn to extrinsic aids such as legislative history. *State ex rel. Dieckhoff v. Severson*, 145 Wis. 2d 180, 189–90, 426 N.W.2d 71 (Ct. App. 1988). We will not construe statutes in a manner that yields an unreasonable result. *Id.* at 193.

¶ 8.   The language in the medical records statute is plain on its face. The words "actual damages to that person" and "reasonable costs" do not establish a legislative intent that would be contravened by class action. The statute simply expresses the legislature's intent that a person is entitled to obtain his or her medical records at a reasonable cost and provides a procedure

to redress unreasonable charges.[3] As the State Bar of Wisconsin (SBA) noted in its amicus curiae brief, "[i]t requires a stretch of tremendous statutory dimension to say this language prevents a class action by those who contend, for example, that a charge of $29.90 for receipt of a copy of one page is an unreasonable charge." Indeed, if the position of All Saints and MMRA were to prevail, the reasonableness of copying charges might never be tested; and we must avoid statutory interpretations that yield unreasonable results.[4]

¶ 9. We believe that given the economic realities of this case, class action may be the only effective means to implement the legislature's intent to provide redress for unreasonable charges in WIS. STAT. § 146.84. The individual amounts at issue are small and not likely to justify individual suits. These economic factors make this case ideally suited to class action. Here, the aggregation of small claims, when joined as a class, becomes worthwhile to litigate. This economy of scale rationale underlying class actions has long been recognized by courts. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting where

---

[3] For a thorough review of the legislative history of WIS. STAT. § 146.84, *see Hannigan v. Sundby Pharmacy, Inc.*, 224 Wis. 2d 910, 921–24, 593 N.W.2d 52 (Ct. App. 1999). We note that the "reasonable costs" language of WIS. STAT. § 146.83(1)(b) has remained unchanged since its enactment as part of the 1980 budget review bill. *See* Laws of 1979, ch. 221, § 649t.

[4] As amici curiae, WHHA and SMS contend that judicial review of reasonable costs would necessarily impose a uniform, fixed price for medical records which is impermissible under these statutes. They note the legislature has never replaced the reasonable costs standard with a uniform rate. However, the trial court has not implied, nor can we assume, that the only remedy for unreasonable charges is to impose a fixed price.

claims averaged $100, "most of the plaintiffs would have no realistic day in court if a class action were not available"); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) (observing that where small individual claims are involved, "aggrieved persons may be without any effective redress unless they employ the class action device"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) (where plaintiff had $70 at stake, "[e]conomic reality dictates that petitioner's suit proceed as a class action or not at all"); *Sisters of St. Mary v. AAER Sprayed Insulation*, 151 Wis. 2d 708, 722, 445 N.W.2d 723 (Ct. App. 1989) (noting class action suits may be appropriate remedy where litigation costs exceed recovery). We observe approvingly that the trial court recognized the particular effectiveness of a class action in this case when he wrote:

> To entertain the individual claim of each requestor who claims that the fee charged to them is unreasonable under § 146.83(1) would be impossible. Even though they might be small claims matters . . . the sheer number of cases would overwhelm the system. The effect of numerous identical claims which could otherwise be handled in a class action would be to either deny or unreasonably delay justice for a host of other litigants. It is concluded that it would be impracticable to bring all of the interested parties before the court and, in any event, it is concluded that if it were not for a class action suit numerous interested parties would be denied their day in court because an individual claim, though meritorious, would not warrant the time of a lawyer
>
> . . . .

¶ 10. We conclude that the medical records statute does not preclude class certification in this case. We

now turn to whether the trial court erred in certifying the class. We will also address whether the trial court inappropriately limited discovery.

¶ 11.   We review a trial court's decision on class certification for an erroneous exercise of discretion. *Schlosser v. Allis-Chalmers Corp.*, 86 Wis. 2d 226, 233, 271 N.W.2d 879 (1978). We will uphold a trial court's determination if it examines the relevant facts, applies a proper legal standard and, in a rational process, reaches a conclusion that a reasonable judge could reach. *Sisters of St. Mary*, 151 Wis. 2d at 713.

¶ 12.   Our courts interpret WIS. STAT. § 803.08[5] as mandating three prerequisites for bringing a class action: (1) there must be a common or general interest shared by all members of the class; (2) the named parties must fairly represent the interest involved; and (3) it must be impracticable to bring all interested parties before the court. *Mercury Records Prod., Inc. v. Econ. Consultants, Inc.*, 91 Wis. 2d 482, 490, 283 N.W.2d 613 (Ct. App. 1979). In addition to satisfying these three criteria, however, we must also engage in an analysis of the benefits and burdens of a class action. Our courts have consistently held the view that the trial court must weigh "the advantages of disposing of the entire controversy in one proceeding" against "the difficulties of combining divergent issues and persons." *Schlosser v. Allis-Chalmers Corp.*, 65 Wis. 2d 153, 172, 222 N.W.2d 156 (1974) (citations omitted); *Sisters of St.*

---

[5] WISCONSIN STAT. § 803.08 provides:

When the question before the court is one of a common or general interest of many persons or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole.

*Mary*, 151 Wis. 2d at 715. Simply put, we need to assess the manageability of the proposed class. We now focus on whether the instant case meets the prerequisites of § 803.08.[6]

¶ 13.  MMRA and All Saints vehemently argue that the class representatives are not the real parties in interest in this case and therefore the first prerequisite, commonality of interest, is lacking. Relying on *McCarthy v. Recordex Service, Inc.*, 80 F.3d 842 (3rd Cir. 1996), they argue that the Wisconsin trial lawyers, not the class members who are their clients, are the real parties in interest in this litigation. This position rests on the premise that sometimes attorneys do not recoup medical record costs from their clients. Therefore, the argument goes, only persons who actually paid for healthcare records can be class representatives.

¶ 14.  We reject this illogical position. As the trial court noted in its memorandum, the relevant fact is the incurring of the debt, not the payment. Although in most cases, attorneys advance the expenses for medical records, it is the client who ultimately pays the final cost by virtue of subtracting these expenses from the settlement or verdict. This procedure is entirely in accordance with the Rules of Professional Conduct which authorize advancement of costs for cases handled on a contingent fee basis. SCR 20:1.8(e)(1) (2001). The purpose behind this directive is to prevent an attorney from acquiring a financial interest in litigation which might interfere with the attorney's exercise of independent professional judgment on behalf of the

---

[6] We summarily dispose of the third requirement, numerousness, since All Saints and MMRA do not contest that it would be impracticable to bring the many possible plaintiffs before the court.

client. *See Brame v. Ray Bills Fin. Corp.*, 85 F.R.D. 568, 578 (N.D.N.Y. 1979). It would be illogical indeed to argue that when attorneys follow a legally and ethically proper procedure for advancing costs in litigation they somehow acquire an impermissible proprietary interest in the litigation.[7]

¶ 15. The *McCarthy* case involved similar facts but an entirely different legal analysis. In *McCarthy*, attorneys' clients challenged the prices for medical record copies by asserting a class action suit under federal antitrust statutes. Applying the "direct purchaser" rule under antitrust law, the court found that clients who were never liable for the costs of medical records lacked standing to sue under RICO. *McCarthy*, 80 F.3d at 854. Its holding, however, was narrowly construed to apply only in the "instant antitrust context." *Id.* at 854 n.19. The dissenting opinion suggested, and the majority did not disagree, that a different result would be obtained under state law. In any event, *McCarthy* is neither binding nor persuasive on the issue of commonality of interest for purposes of class certification under Wisconsin law.

¶ 16. Once we dispose of the "true parties in interest" argument, it is clear that the first prerequisite for class certification has been established in the record. The class, as defined by the trial court, includes all persons who requested copies of medical records as

---

[7] As amicus curiae, the SBA points out that lawyers who make advancements in contingency litigation with the expectation of being repaid may not deduct them as ordinary business expenses. *Canelo v. Comm'r*, 447 F.2d 484, 485 (9th Cir. 1971) (per curiam). Taxing authorities thus view this interest as a mere loan and not a true proprietary interest deserving of a tax break.

an "ordinary request" under MMRA's set fee schedule. There is a common legal question as to whether such fees are unreasonable under WIS. STAT. § 146.83(1)(b). Also, the claims of the representative parties are typical of the class in that each asserts the charges were unreasonable; each class member's claim could be determined in a single case and would involve common issues of proof. We agree with the trial court's conclusion that "it is the defendants who have through the application of their charging schedule clearly defined the class."

¶ 17.   Next, All Saints and MMRA contend that the trial court erred in holding that the second prerequisite, adequacy of representation, had been satisfied. We note that adequate representation is the foundation which renders class actions consistent with due process. *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940). If absent class members are not adequately represented, any final judgment will have no res judicata effect as to them. *Phillips Petroleum Co.*, 472 U.S. at 808.

¶ 18.   In determining adequacy of representation, the primary criteria are: (1) whether the plaintiffs or counsel have interests antagonistic to those of absent class members; and (2) whether class counsel are qualified, experienced and generally able to conduct the proposed litigation. *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985). So long as the individual has a general understanding of the nature of the class claims alleged, the individual can serve as representative. Andrew P. Campbell, *Class Actions: A Primer*, 20 AM. J. TRIAL ADVOC. 305, 310 (1997).

¶ 19.   All Saints and MMRA's assertion that the class representatives are inadequate is based on the

445

knowledge and abilities of the individuals as revealed in depositions taken during discovery. Again, we find no error where the trial court, based on the record, found the individuals to have a basic understanding of the elements of the claim and understand they speak for others whose complaints are similar to their own. Nor do we find error where the trial court concluded that each named class representative has a sufficient interest in the outcome to ensure vigorous advocacy.

¶ 20.   All Saints and MMRA allege that had they been allowed to proceed with discovery, they would have been able to more fully develop the record with respect to adequacy of representation. Management of discovery is within the discretion of the trial court. 2 NEWBERG ON CLASS ACTIONS § 7.08 (3d ed. 1992). In this case, the trial judge determined that the record, consisting of interrogatories, affidavits and depositions, supplied ample facts to resolve class certification issues, including adequacy of representation.[8] Therefore, the trial court did not erroneously exercise its discretion in holding that further discovery on the procedural issue of class certification was unnecessary. Moreover, when parties opposing class certification use discovery from class representatives as a device to harass and embarrass, the trial court may appropriately limit the number and scope of depositions. *Id.* Here, the record shows that MMRA went beyond the scope of permissible discovery by inquiring into the representa-

---

[8] It is clear from the record that the information All Saints and MMRA sought to discover was the contents of contingency fee agreements between the class representatives and counsel in an effort to bolster their "real parties in interest" theory. We have rejected that theory, as did the trial court, and any discovery on this issue is irrelevant.

tives' ability to pay sanctions if required. The trial court found that this attempt to harass and intimidate was inappropriate and barred further depositions on the issue of certification. Again, we find no error in this exercise of the court's discretion.

¶ 21. The final arguments of All Saints and MMRA concern the issue of manageability. They contend that the trial court erred in determining manageability because of individual issues that may arise in this case if the claims are aggregated. Relying on two Wisconsin cases, *Sisters of St. Mary* and *Derzon v. Appleton Papers, Inc.*, No. 96–CV–3678, 1998 WL 1031504 (Wis. Cir. July 7, 1998), *aff'd sub nom. Derzon v. New Oji Paper Co.*, No. 99–1368, unpublished slip op. (WI App. October 31, 2000),[9] they argue that individual damages questions render the case unmanageable as a class action. *Sisters of St. Mary* involved hospitals seeking to recover the costs of asbestos abatement. The facts which rendered *Sisters of St. Mary* unmanageable as a class action included the application of several bodies of law, prolonged trial proceedings which would take years, and over forty affirmative defenses raised by the defendants. *Sisters of St. Mary*, 151 Wis. 2d at 718–19. Under these facts, the court observed, the trial judge did not err in concluding that the question of damages presented "staggering problems of logistics" which made the case unmanageable. *Id.* at 721 (citations omitted).

---

[9] We note that WIS. STAT. RULE 809.23(3) does not bar citation to unpublished circuit court opinions; *see Brandt v. LIRC*, 160 Wis. 2d 353, 363–65, 466 N.W.2d 673 (Ct. App. 1991). We further note that we do not consider the cited circuit court decision as binding precedent or authority. We limit our discussion of the cited circuit court opinion to determine if its reasoning or logic is persuasive to the case before us. *Id.* at 365.

¶ 22. *Derzon* was an even more complicated case. An attorney sought class certification in a suit that alleged price fixing claims under Wisconsin antitrust laws against fax paper manufacturers and distributors. The trial court noted that "[t]he multi-state character of the class, the indirect purchaser theory, the vast number of potential members and the many different types of wholesalers and retailers included with actual consumers all combine to create significant complexities . . . ." *Derzon*, 1998 WL 1031504, at *4. Given these facts, the trial court concluded that the plaintiff could not prove injury by common evidence or that damages claims could reasonably be united in a single case. *Id.* at *10.

¶ 23. We easily distinguish the facts in this case from the complicated factual scenarios presented in *Derzon* and *Sisters of St. Mary*. We have no issues of subclasses, multiple and complicated defenses,[10] or the application of different state laws. Instead, we have the singular legal issue of whether the fees charged to the class were unreasonable under Wisconsin law. The trial judge did not erroneously exercise his discretion in finding that "[t]he facts applicable to each proposed class member would not be complex . . . one answer is going to respond to each of the persons: the charges were reasonable or they were unreasonable." Of course, the burden for showing "unreasonableness" is on the class representatives. If they prevail, damages will be

---

[10] All Saints and MMRA refer to the voluntary payment doctrine as a defense which renders the suit unmanageable as a class action. The trial court noted this concern but did not agree that it would make the class unmanageable. We do not consider this to be an unreasonable conclusion.

assessed to recoup the portion of the fees found to be unreasonable.

¶ 24. In conclusion, we hold that the plain language of WIS. STAT. §§ 146.83(1)(b) and 146.84(1)(b) does not preclude certification of a class action in a suit to recover unreasonable fees charged for copies of healthcare records. We also hold that the trial court reasonably applied the principles of commonality, adequacy of representation and manageability in certifying the class. The order certifying the class action suit is affirmed. Furthermore, the order barring further discovery on the issue of class certification was well within the discretion of the trial court.

*By the Court.*—Orders affirmed.